HANSHAW, a Minor, by Her Next Friend and Legal
Guardian, HANSHAW, et al., Appellants,

v.

RIVER VALLEY HEALTH SYSTEMS, f.k.a. Lawrence
County General Hospital, Appellee.

[Cite as *Hanshaw v. River Valley Health Sys.*, 152 Ohio App.3d 608, 2003-Ohio-2358.]

Court of Appeals of Ohio,
Fourth District, Lawrence County.

No. 02CA31.

Decided May 7, 2003.

William L. Mundy and Donald R. Capper, for appellant.

Gerald L. Draper and Stephen K. Sesser, for appellee.

PETER B. ABELE, Judge.

{¶ 1} This is an appeal from a Lawrence County Common Pleas Court summary judgment in favor of River Valley Health System (f.k.a. Lawrence County General Hospital), defendant below and appellee herein. The trial court determined that appellee did not owe a duty to notify Terria Hanshaw, plaintiff below and appellant herein, of abnormal newborn screening results.

{¶ 2} Appellant raises the following assignments of error for our review:

"FIRST ASSIGNMENT OF ERROR:

"The court of common pleas erred in granting summary judgment in favor of defendant, Lawrence County General Hospital, because there were genuine issues of material fact which precluded the granting of summary judgment."

"SECOND ASSIGNMENT OF ERROR:

"The court of common pleas erred in granting summary judgment in favor of defendant, Lawrence County General Hospital, because the defendant was not entitled to judgment as a matter of law."

{¶ 3} The parties do not dispute the underlying facts. On December 14, 1986, Karen Lewis gave birth to Terria Lewis at Lawrence County General Hospital. Dr. Thomas Tsou was the attending physician.

{¶ 4} In 1986, Ohio Adm.Code 3701–45–01 required children to undergo newborn screening. Thus, Dr. Tsou ordered a newborn screening test to be performed on Terria. On December 16, 1986, Terria's blood was drawn for newborn testing. The test results subsequently were sent to both Dr. Tsou and appellee. The test results were abnormal, indicating that Terria had homocystinuria. Upon receiving the results, the hospital placed them in Terria's medical chart. The hospital did not contact Terria's mother.

{¶ 5} Dr. Tsou also received Terria's test results. Dr. Tsou stated that upon receiving newborn screening results, he routinely notified the parents of the results and advised the parents of any need for a followup. For reasons not entirely clear, no followup tests were performed on Terria and, consequently, Terria's condition went untreated.

{¶ 6} Appellant subsequently filed suit against both Dr. Tsou and appellee. Appellant alleged, inter alia, that appellee possessed a duty to notify her of the abnormal test results.

{¶ 7} To support her claim against appellee, appellant retained James Massey as an expert in hospital administration. Massey opined that appellee deviated from the accepted standard of care applicable to hospitals. Massey stated that appellee possessed a duty to (1) review the newborn screening results that it

received, (2) recall the newborn for additional testing, and (3) provide advice and treatment for the newborn's homocystinuria.

{¶ 8} On May 15, 2002, appellee filed a motion for summary judgment and asserted that it had no duty to notify appellant of the abnormal test results. Appellee contended that the Ohio Administrative Code required that the physician who ordered the screening possessed the duty to contact the parent.

{¶ 9} On May 8, 2002, the trial court granted appellee's summary judgment motion. The court determined that appellee did not possess a duty to contact appellant to notify her of the abnormal test results. Appellant filed a timely notice of appeal.

{¶ 10} In her two assignments of error, appellant argues that the trial court erred by granting summary judgment in appellee's favor. Appellant claims that the trial court erroneously determined that appellee did not owe a duty to contact the newborn's parents upon learning of the abnormal test results. Appellant asserts that appellee possessed a common-law duty to notify her of the abnormal test results and that the Ohio Administrative Code imposed such a duty on appellee.

{¶ 11} Appellee asserts that it did not possess either a common-law duty or a statutory duty to notify appellant of the abnormal test results. Appellee contends that under the Ohio Administrative Code, it was the attending physician's duty to notify appellant. Thus, appellee argues that the Ohio Administrative Code placed no duty upon it to notify appellant of the abnormal test results. Appellee further asserts that the Ohio Administrative Code abrogates any common-law negligence action appellant may have against it.

{¶ 12} Initially, we note that when an appellate court reviews a trial court's decision regarding a motion for summary judgment, an appellate court conducts a de novo review. See, e.g., *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243; *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, an appellate court must independently review the record to determine whether summary judgment was appropriate and need not defer to the trial court's decision. See *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411–412, 599 N.E.2d 786. In determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.

{¶ 13} Civ.R. 56(C) provides:

" * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, tran-

scripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶ 14} Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429–430, 674 N.E.2d 1164.

{¶ 15} In responding to a motion for summary judgment, the nonmoving party may not rest on "[u]nsupported allegations in the pleadings." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact. Specifically, Civ.R. 56(E) provides:

" * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."

{¶ 16} Consequently, once the moving party satisfies its Civ.R. 56 burden, the nonmoving party must demonstrate, by affidavit or by producing evidence of the type listed in Civ.R. 56(C), that a genuine issue of material fact remains for trial. A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264; *Jackson v. Alert Fire & Safety Equip., Inc.* (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027.

{¶ 17} In order to survive a properly supported motion for summary judgment in a negligence action, a plaintiff must establish that genuine issues of material

fact remain as to whether (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the duty of care, and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. See *Hester v. Dwivedi* (2000), 89 Ohio St.3d 575, 578, 733 N.E.2d 1161; *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 680, 693 N.E.2d 271; *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614; *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 15 OBR 179, 472 N.E.2d 707.

{¶ 18} If a defendant points to evidence illustrating that the plaintiff will be unable to prove any one of the foregoing elements and if the plaintiff fails to respond as Civ.R. 56 provides, the defendant is entitled to judgment as a matter of law. See *Feichtner v. Cleveland* (1994), 95 Ohio App.3d 388, 394, 642 N.E.2d 657; *Keister v. Park Centre Lanes* (1981), 3 Ohio App.3d 19, 3 OBR 20, 443 N.E.2d 532; *Lindquist v. Dairy Mart/Convenience Stores of Ohio, Inc.* (Nov. 14, 1997), Ashtabula App. No. 97–A–0015, 1997 WL 1945289.

{¶ 19} The crux of the issue in the case at bar is whether appellee owed appellant a duty to notify her of the newborn screening results. Appellant maintains that appellee owed both a statutory and a common-law duty to notify her of the results. Appellee claims that it possessed no statutory or common-law duty to notify appellant of the newborn screening results.

{¶ 20} Whether a defendant owes a plaintiff a duty is a fundamental aspect of establishing actionable negligence. *Jeffers*, supra. As the *Jeffers* court stated:

> "If there is no duty, then no legal liability can arise on account of negligence. Where there is no obligation of care or caution, there can be no actionable negligence." (Footnotes omitted.) 70 Ohio Jurisprudence 3d (1986) 53–54, Negligence, Section 13. Only when one fails to discharge an existing duty can there be liability for negligence. Id., 43 Ohio St.3d at 142, 539 N.E.2d 614.

{¶ 21} Whether a duty exists on the part of a particular defendant is a question of law for the court to decide. See *Grover v. Eli Lilly & Co.* (1992), 63 Ohio St.3d 756, 762, 591 N.E.2d 696 (stating that "[t]he existence of a legal duty is a question for the court, unless alternate inferences are feasible based on the facts"); *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265; *Wheeling & Lake Erie RR. Co. v. Harvey* (1907), 77 Ohio St. 235, 240, 83 N.E. 66; see, also, *Midwestern Indemn. Co. v. Wiser* (2001), 144 Ohio App.3d 354, 760 N.E.2d 62; *Arsham v. Cheung–Thi Corp.* (May 31, 2001), Cuyahoga App. No. 78280., 2001 WL 605411

{¶ 22} We further note that "[s]imply because resolution of a question of law involves a consideration of the evidence does not mean that the question of law is converted into a question of fact or that a factual issue is raised." *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68, 23 O.O.3d 115, 430 N.E.2d

935. As stated in *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 219, 58 O.O.2d 424, 280 N.E.2d 896: "[A] review of the evidence is more often than not vital to the resolution of a question of law. But the fact that a question of law involves a consideration of the facts or the evidence does not turn it into a question of fact." See, also, *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 148, 735 N.E.2d 433. "[A] duty for negligence purposes may be established by common law, through a legislative enactment, or by the particular facts and circumstances of the case." *State ex rel. Woods v. Oak Hill Community Med. Ctr.* (2001), 91 Ohio St.3d 459, 461, 746 N.E.2d 1108, citing *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 565, 697 N.E.2d 198.

■ {¶ 23} In the case at bar, we agree with appellee that it did not possess either a statutory or a common-law duty to notify appellant of the newborn screening results. Former Ohio Administrative Code 3701–45–02 provided[1]:

---

1. {¶ a} The current version of the Ohio Administrative Code more extensively sets forth the respective duties of hospitals and physicians with respect to relaying the newborn screening results. The current version of Ohio Adm.Code 3701–45–02 provides:

{¶ b} "(B) All hospitals and freestanding birthing centers that are required by this chapter to cause specimens to be collected for newborn screening for genetic, endocrine, or metabolic disorders shall:

{¶ c} "(1) Designate a newborn screening coordinator and physician responsible for the coordination of the facility's newborn screening;

{¶ d} "(2) Notify the chief of the Ohio department of health bureau of public laboratories of the name of the individual designated as the newborn screening coordinator on a yearly basis and whenever the designate individual changes; and

{¶ e} "(3) Develop a written protocol for tracking newborn screening. The protocol must include a requirement that the name of the physician attending the child after birth or a designee be placed on the specimen slip sent with the initial specimen to the Ohio department of health public health laboratory."

Ohio Admin. Code 3701–45–05 further specifies:

{¶ f} "(A) The person responsible for causing the initial blood specimen to be collected for screening under this rule shall be as follows:

{¶ g} "(1) For births which occur in a hospital or freestanding birth center, the child's attending physician, the certified nurse-midwife, the certified nurse practitioner or the clinical nurse specialist acting in accordance with Chapter 4723. of the Revised Code shall cause the blood specimen to be collected from each newborn child prior to discharge from the newborn nursery unless any of the following apply: OH ADC 3701–45–05

{¶ h} 'This rule prescribes the procedures that apply if upon initial screening of a specimen, the bureau of public health laboratories determines that the result is moderate or high risk."

{¶ i} Ohio Adm.Code 3701–45–07 sets forth how the results of the newborn screening tests are to be communicated:

{¶ j} "(A) The director shall communicate the results to the following person, as applicable:

{¶ k} "(1) If a child was born in a hospital or freestanding birth center, the director shall communicate the results to the child's attending physician, certified nurse-midwife, certified nurse practitioner or clinical nurse specialist acting in accordance with Chapter 4723. of the Revised Code or the newborn screening coordinator if the director is unable to contact the attending physician, certified nurse-midwife, certified nurse practitioner or clinical nurse specialist acting in accordance with Chapter 4723. of the Revised Code.

"(A) The Ohio department of health, Division of Public Health Laboratories, shall provide screening and quantitative tests for phenylketonuria, homocystinuria, galactosemia, hypothyroidism, or other genetic, endocrine, or metabolic disorders, and specimen collection outfits for tests to be performed in the department's laboratory. The result of each test performed by the said laboratory shall be transmitted to the person who submitted the specimen or to the hospital. In addition, any abnormal or suspicious test result shall be reported to such person in a manner prescribed by the director of health. (B) The Ohio department of health, division of public health laboratories, shall use standard testing methods approved by the director of health and shall: "(1) Complete each test within three working days after receiving the properly collected and submitted specimen * * * and promptly transmit the results of each test performed to the person who submitted the specimen or to the hospital in the manner prescribed and provided by the director of health; "(2) Require the person who submitted a specimen which had an abnormal or suspicious test result to cause a second specimen to be tested by the Ohio department of health, division of public health laboratories, or another laboratory approved by the director of health. The laboratory shall transmit the results of the second specimen to the person who submitted the specimen; and to the chief, division of public health laboratories, the Ohio department of health; "(3) Keep records on each infant tested in the laboratory for not less than twenty-one years."

{¶ 24} Our reading of the foregoing Ohio Administrative Code provision reveals that the duty to followup regarding abnormal test results falls upon the person who submitted the blood specimen. In the case at bar, the attending physician, Dr. Tsou, submitted the specimen. Appellee is not the "person" that the Ohio Administrative Code refers to as the "person" who submitted the specimen. Thus, appellee did not possess a statutory duty to notify appellant of the abnormal test results.

{¶ 25} We further conclude that appellee did not possess a common-law duty to notify appellee of the newborn screening results. Initially, we note that we agree generally with appellant that Ohio Adm.Code 3701–45–01 does not

---

{¶ l} "(2) If the child was not born in a hospital or freestanding birth center, the director shall communicate the results to the person designated in paragraph (A)(2) or (A)(3) of rule 3701–45–05 of the Administrative Code, as applicable, who submitted the specimen.

{¶ m} "(B) The person notified of the results by the director under paragraph (A) of this rule shall communicate the results to the child's parent, legal guardian, or legal custodian and shall obtain and submit a second blood specimen for screening or diagnostic testing in accordance with the following procedures * * *."

abrogate appellee's common-law duty of care. See *Vaccariello v. Smith & Nephew Richards, Inc.* (2002), 94 Ohio St.3d 380, 384, 763 N.E.2d 160; *Carrel v. Allied Products Corp.* (1997), 78 Ohio St.3d 284, 287, 677 N.E.2d 795. In *Carrel,* the Ohio Supreme Court stated that "in the absence of language clearly showing the intention to supersede the common law, the existing common law is not affected by the statute, but continues in full force." *Carrel,* 78 Ohio St.3d at 287, 677 N.E.2d 795. The court explained that " '[t]here is no repeal of the common law by mere implication.' " Id. at 287, 677 N.E.2d 795, quoting *Frantz v. Maher* (1957), 106 Ohio App. 465, 472, 7 O.O.2d 209, 155 N.E.2d 471.

{¶ 26} Simply because appellant may possess a common-law cause of action for negligence against appellee, however, does not mean that appellant's assignments of error must be sustained. Rather, to find that a common-law cause of action for negligence exists in this context, appellant still must show that appellee possessed a common-law duty to notify her of the newborn screening results. Under the facts present in the instant case, however, we are unwilling to conclude that appellee possessed such a duty.

{¶ 27} Defining a particular defendant's common-law duty generally " 'depends on the foreseeability of the injury.' " *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.,* supra, 81 Ohio St.3d at 680, 693 N.E.2d 271, quoting *Menifee,* 15 Ohio St.3d at 77, 15 OBR 179, 472 N.E.2d 707; see, also, *Hill v. Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St.3d 36, 39, 521 N.E.2d 780. In determining the foreseeability of an injury, courts should consider "whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Menifee,* 15 Ohio St.3d at 77, 15 OBR 179, 472 N.E.2d 707; see, also, *Texler,* 81 Ohio St.3d at 680, 693 N.E.2d 271. "Injury is foreseeable if a defendant knew or should have known that its act was likely to result in harm to someone." *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 645, 597 N.E.2d 504.

{¶ 28} The Ohio Supreme Court has recognized, however, that "[t]here is no formula for ascertaining whether a duty exists," *Mussivand,* 45 Ohio St.3d at 318, 544 N.E.2d 265, and that "the concept of duty in negligence law is at times an elusive one." *Wallace v. Ohio Dept. of Commerce* (2002), 96 Ohio St.3d 266, 274, 773 N.E.2d 1018. Thus, in defining a particular party's duty, the duty may be determined by "the court's 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' " Id., quoting *Weirum v. RKO Gen., Inc.* (1975), 15 Cal.3d 40, 46, 123 Cal.Rptr. 468, 539 P.2d 36, citing Prosser, Law of Torts (4th Ed. 1971) 325–326. The *Mussivand* court observed:

" 'Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined con-

cepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall. (Prosser, Palsgraf Revisited (1953), 52 Mich. L.Rev. 1, 15).' " Id., quoting *Weirum,* supra.

{¶ 29} Under the particular facts present in the case sub judice, we are unwilling to conclude that appellee had a common-law duty to notify appellant of the abnormal test results. In our judgment, the duty should not fall upon appellee, a hospital which simply happened to be the location where the child was born.[2]

{¶ 30} We recognize that appellant has presented expert testimony in an attempt to establish that appellee had a common-law duty to notify appellant of the abnormal test results. However, because the issue of whether a particular duty exists in a given situation is a question of law for the courts to decide. Thus, the expert's testimony in the case at bar does not, standing alone, create a genuine issue of material fact that precludes summary judgment in appellee's favor. We hasten to add that occasions may arise when an expert's testimony regarding duty does, in fact, create a genuine issue of material fact. The instant case is not one of those occasions, however.

{¶ 31} Accordingly, based upon the foregoing reasons, we overrule appellant's assignments of error and affirm the trial court's judgment.

Judgment affirmed.

KLINE, J., concurs.

HARSHA, J., dissents.

---

**2.** {¶ a} As the court recognized in *Turner v. Children's Hosp., Inc.* (1991), 76 Ohio App.3d 541, 555, 602 N.E.2d 423:

{¶ b} "[M]any courts have found physicians liable in malpractice for failure to communicate important information to patients. See Annotation, Malpractice: Failure of Physician to Notify Patient of Unfavorable Diagnosis or Test (1973), 49 A.L.R.3d 501. Assuredly, the physician-patient relationship is one of special trust and confidence in which the physician has a duty to reveal to the patient that which in his best interest he should know. *Phillips v. Good Samaritan Hosp.* (1979), 65 Ohio App.2d 112, 19 O.O.3d 66, 416 N.E.2d 646; *Estate of Leach v. Shapiro* (1984), 13 Ohio App.3d 393, 13 OBR 477, 469 N.E.2d 1047. Similarly, it is clear that a physician; upon completion of his services, must give the patient proper instructions to guard against the risk of future harm. *Faulkner v. Pezeshki* (1975), 44 Ohio App.2d 186, 73 O.O.2d 201, 337 N.E.2d 158. See, also, *Niemiera v. Schneider* (1989), 114 N.J. 550, 555 A.2d 1112 (evidence that physician's failure to instruct mother on DPT reactions and that earlier diagnosis might have prevented brain damage, created issue for jury).

{¶ c} "The case law definitely bears out that patients must be told that which a reasonably prudent physician would disclose. If a doctor knows of a patient's weakened condition, susceptibility to injury, or makes a diagnosis of a disease, and then fails to tell the patient, who later suffers injury or damage because of the lack of such information, then the law holds the physician accountable."

618

HARSHA, Judge, dissenting.

{¶ 32} Because I conclude that the hospital had a common-law duty to notify the appellant of abnormal test results, I respectfully dissent.