DECISION AND JUDGMENT ENTRY
{¶ 1} Kimberly Hansen and her daughter, Rebecca Hansen ("the Hansens"), sued Wal-Mart Stores, Inc., and the Chillicothe Wal-Mart Supercenter ("Wal-Mart"), for personal injuries after a display of stacked "screened houses" toppled onto the child. The trial court granted a summary judgment in favor of Wal-Mart, concluding that the Hansens had failed to produce evidence that Wal-Mart had acted negligently in constructing, inspecting, or maintaining the display. It also concluded that the doctrine of res ipsa loquitur did not apply because Wal-Mart did not have exclusive control of the display at the time it collapsed.
 {¶ 2} The Hansens argue that they produced sufficient evidence that Wal-Mart had actual and constructive knowledge that the display was in an unreasonably hazardous condition. However, none of the evidence put forward by the Hansens shows that the display was unreasonably hazardous or that Wal-Mart was or should *Page 2 
have been aware that the stacks were unstable. Thus, they failed in their burden to set forth specific facts showing that there is a genuine issue for trial.
 {¶ 3} The Hansens also argue that the trial court erred in concluding that the doctrine of res ipsa loquitur does not apply to this case. However, the doctrine creates an inference of negligence only when the defendant maintains exclusive control of the instrumentality causing the injury. Because there is no question that the public had access and the ability to render the display unstable, the Hansens are not entitled to the application of res ipsa loquitur.
 {¶ 4} Accordingly, the Hansens have failed to demonstrate the existence of a genuine issue of material fact regarding whether Wal-Mart breached the duty of care owed to its business invitees, and summary judgment in Wal-Mart's favor was appropriate.
 I. Facts {¶ 5} This suit is based upon an accident that occurred in 2004 when Plaintiff Kimberly Hansen and her daughter, four-year old Plaintiff Rebecca Hansen, went shopping at the Chillicothe, Ohio, Wal-Mart Store. Kimberly Hansen was pushing a shopping cart while Rebecca Hansen trailed behind at a distance of about five feet. They passed a display of bagged "screened houses" that are used for camping. This merchandise was arranged in separate stacks, with four to five of the screened houses in each stack. When asked in her deposition what she noticed about the display, Kimberly Hansen stated that there had been "too many" of the screened houses placed in each stack and explained that "[she] wouldn't stack something too high knowing that it would fall." However, she acknowledged that she did not say or do anything to protect *Page 3 
the child as she passed the stacks. After Kimberly Hansen passed the display, she heard a thump and, when she turned around, she saw her daughter lying on the floor underneath a pile of several of the screened houses. Kimberly Hansen sued on behalf of herself and her daughter, alleging the injuries caused by the merchandise falling on Rebecca Hansen resulted from Wal-Mart's negligence.
 {¶ 6} After discovery, Wal-Mart moved for a summary judgment, arguing Hansen had failed to produce sufficient evidence that Wal-Mart breached its duty of ordinary care to the Hansens. The trial court entered a summary judgment in favor of Wal-Mart, finding that "there was no evidence of any negligence on the part of [Wal-Mart] that caused Rebecca's injuries." It noted that the record does not contain any evidence regarding how the screened houses came to fall on the child. Although the trial court recognized that Kimberly Hansen had testified that she believed that there were too many screened houses in the stack, the court concluded that "there was no evidence that the manner in which the[ ] houses were stacked was hazardous." Furthermore, the court explained that "there was simply no evidence to establish that Rebecca Hansen did not touch or pull at the display of screened houses." The court also found a lack of evidence that Wal-Mart either created or knew about any hazardous condition. Finally, the trial court concluded that the doctrine of res ipsa loquitur was inapplicable because the evidence showed that the stacks of screened houses were not in the exclusive control of Wal-Mart, e.g., Rebecca Hansen and other customers had access to the display. Hansen appeals this decision.
 II. Assignments of Error {¶ 7} Hansen presents four assignments of error: *Page 4 
 1. "The trial court abused its discretion and erred as a matter of law in ruling that Defendants had neither actual knowledge and/or constructive knowledge of the dangerous conditions caused by Defendants ultimately resulting in the injuries to the Appellants."
 2. "The trial court abused its discretion and erred as a matter of law in ruling that Defendants did not have `exclusive control' over the falling merchandise which physically and emotionally injured Appellants Kimberly Hansen and Rebecca Hansen."
 3. "The trial court abused its discretion and erred as a matter of law in failing completely to consider the deposition testimony of Defendants' `] employees taken during discovery depositions relative to Defendants exclusive control of the falling merchandise which injured Appellants."
 4. "The trial court abused its discretion and erred as a matter of law in ruling that the doctrine of res ipsa loquitur was inapplicable to Defendants['] negligent stacking of [their] merchandise, resulting in a lack of ordinary care incumbent upon Defendants."
 III. Standard of Review {¶ 8} In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, i.e., we review the judgment independently and without deference to the trial court's determination.Doe v. Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186, 738 N.E.2d 1243. A summary judgment is appropriate only when: (1) there is no genuine issue of material fact; (2) reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to judgment as a matter of law. Id.; Bostic v.Connor (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881; Civ. R. 56(C). The party moving for summary judgment has the initial burden of informing the trial court of the basis of the motion, and identifying those portions of the record that demonstrate the absence of a material fact. Morgan v. Gracely, Washington App. No. 05CA36, 2006-Ohio-2344, at ¶ 4, citing Dresher v. Burt *Page 5 
(1996), 75 Ohio St.3d 280, 293. To meet its burden, the moving party must specifically refer to the "pleadings, depositions, answers to interrogatories, written stipulations of fact, if any," which affirmatively demonstrate that the non-moving party has no evidence to support the non-moving party's claims. Civ. R. 56(C); Morgan at ¶ 4. That is, a mere assertion that the other side cannot prove its case is not enough; the movant must identify some summary judgment evidence that affirmatively shows the nonmoving party has no evidence to support its claims. Dresher, 75 Ohio St.3d at 293. If the moving party satisfies this burden, the nonmoving party then has the reciprocal burden outlined in Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue for trial. Mere speculation and unsupported conclusory assertions are not sufficient. Boulton v. Vadakin, Washington App. No. 07CA26, 2008-Ohio-666, at ¶ 20. If the nonmovant does not satisfy this evidentiary burden and the movant is entitled to judgment as a matter of law, the court should enter a summary judgment accordingly. Kulch v.Structural Fibers, Inc., 78 Ohio St.3d 134, 145, 1997-Ohio-219,677 N.E.2d 308.
 IV. Premises Liability {¶ 9} A negligence action requires a plaintiff to establish that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. Texler v. D.O.Summers Cleaners (1998), 81 Ohio St.3d 677, 680, 693 N.E.2d 217;Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614;Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75,472 N.E.2d 707. Generally, if a defendant points to evidence showing that the plaintiff cannot prove any one of the foregoing elements, and if the plaintiff fails to respond as Civ. R. 56 provides, the *Page 6 
defendant is entitled to summary judgment. Deem v. Columbus SouthernPower Co., Meigs App. No. 07CA6, 2007-Ohio-4404, at ¶ 9, citingFeichtner v. Cleveland (1994), 95 Ohio App.3d 388, 394, 642 N.E.2d 657, and Keister v. Park Centre Lanes (1981), 3 Ohio App.3d 19,443 N.E.2d 532.
 {¶ 10} In a premises liability case, the relationship between the owner or occupier of the premises and the injured party determines the duty owed. Louderback v. McDonald's Restaurant, Scioto App. No. 04CA2981, 2005-Ohio-3926, at ¶ 17, citing Gladon v. Greater ClevelandRegional Transit Auth. (1996), 75 Ohio St.3d 312, 315, 662 N.E.2d 287, and Shump v. First Continental-Robinwood Assocs. (1994),71 Ohio St.3d 414, 417, 644 N.E.2d 291. In this case, the parties agree that the Hansens were business invitees. Therefore, Wal-Mart owed them "the duty to exercise ordinary care in maintaining its premises in a reasonably safe condition, such that its business invitees will not unreasonably or unnecessarily be exposed to danger." Borden v. Ohio Valley Supermarkets,Inc., Gallia App. No. 04CA5, 2005-Ohio-1033, at ¶ 16, citing Paschal v.Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203, 203, 480 N.E.2d 474; see, also, Bevins v. Arledge, Pickaway App. No. 03CA19, 2003-Ohio-7297, at ¶ 14 ("A possessor of premises generally owes a business invitee a duty of ordinary care in maintaining the property in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger.").
 {¶ 11} Furthermore, a premises owner or occupier "must not only use care to warn of latent dangers of which the owner knows, but must also inspect the premises for possible unknown dangerous conditions. * * * The owner must also take precautions to protect the invitee from foreseeable dangers." Hann v. Roush ex rel. Estate of Rice, *Page 7 
Washington App. No. 00CA55, 2001-Ohio-2614, citing Perry v. EastgreenRealty Co. (1978), 53 Ohio St.2d 51, 52, 372 N.E.2d 335. A premises owner or occupier will be charged with constructive notice of hazards that are foreseeable and that would have been revealed by a reasonable inspection. Hann, supra, citing Shetina v. Ohio University (1983),9 Ohio App.3d 240, 242, 459 N.E.2d 587 ("Under these circumstances, it was reasonable for the trier of the facts to infer that defendant was negligent with respect to inspection and that a reasonable inspection would have revealed a defective dangerous condition."); see, also,Perry, 53 Ohio St.2d at 52, 372 N.E.2d 335 ("The occupier must not only use care not to injure the visitor by negligent activities, and warn him of latent dangers of which the occupier knows, but he must also inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use."). As the Supreme Court of Ohio explained in Perry, "the obligation of reasonable care is a full one, applicable in all respects, and extending to everything that threatens the invitee with an unreasonable risk of harm." Id.
 {¶ 12} As Wal-Mart owed a duty of reasonable care to the Hansens, we must determine whether there was a genuine factual question about whether Wal-Mart breached that duty. While the existence of a duty presents a question of law, Hanshaw v. River Valley Health Sys.,152 Ohio App.3d 608, 2003-Ohio-2358, 789 N.E.2d 680, at ¶ 21, citingMussivand v. David (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265, the existence of a breach is normally a factual question left to the jury.Pacher v. Invisible Fence of Dayton, 154 Ohio App.3d 744,2003-Ohio-5333, 798 N.E.2d 1121, at ¶ 41; *Page 8 Betts v. Windland (Nov. 4, 1991), Washington App. No. 90CA39,1991 WL 238204. However, where there is no genuine issue of fact for the jury to decide, a court may grant summary judgment if the moving party is otherwise entitled to judgment as a matter of law. See Civ.R. 56(E):Shooter v. Perella, Lucas App. No. l-07-1066, 2007-Ohio-6122, at ¶ 25
("[I]f the facts are undisputed, the issue becomes a question of law which can be determined on summary judgment" (citing Tolliver v.Newark (1945), 145 Ohio St. 517, 526)). In order to demonstrate a breach of duty, the Hansens must show one of the following: 1) that Wal-Mart, through its officers or employees, was responsible for the hazard complained of, 2) that Wal-Mart or its agents had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly, or 3) that the danger had existed for a sufficient length of time to reasonably justify the imposition of constructive notice. Johnson v. Wagner Provision Co. (1943), 141 Ohio St. 584, 589,49 N.E.2d 925; Pruitt v. Hayes (Mar. 5, 1998), Lawrence App. No. 97CA14,1998 WL 106159 ("In order for a business invitee to show the occupier breached the duty to keep the premises in a reasonably safe condition, the invitee must show that either the occupier created the dangerous condition, had actual notice of the condition, or the danger existed for a sufficient length of time to establish constructive knowledge of the condition."). Alternatively, a summary judgment was inappropriate if the Hansens demonstrated that the doctrine of res ipsa loquitur applies to allow the inference of "`both negligence and causation from the mere occurrence of the event and the defendant's relation to it.'" Degen v.Mann, Ross App. 00CA2575, 2001-Ohio-2468, quoting Restatement (Second) Torts § 328D, cmt. b. We address each issue in turn. *Page 9 
 A. Direct Evidence of Negligence {¶ 13} In their first assignment of error, the Hansens argue that Wal-Mart is "fully aware of the risks created by stacking merchandise in unstable ways" and that Wal-Mart had both actual and constructive knowledge that the screened houses were stacked in an unstable manner. They rely on the testimony of Sandy Lane, a Wal-Mart associate who was working near the display of screened houses at the time that the stacks collapsed. Lane did not see the accident, but she testified that she could not see over the stacks of the screened houses that were still standing after some had fallen on the child. This, the Hansens argue, shows that the stacks were too tall. Lane also testified that she believed that the display had been up for at least three days and that she did not know whether a "bump test" — where Wal-Mart tests the stability of a display — had been performed. Finally, the Hansens rely on the testimony of Store Manager John Chlovechok, who said that Wal-Mart employs a zone-defense where employees are tasked with straightening merchandise in particular areas of the store, to show that Wal-Mart should have known that the stacks were unstable.
 {¶ 14} The Hansens' evidence does not create a genuine issue of material fact about whether Wal-Mart created a hazardous condition or whether it was aware or should have been aware that the display was unstable and dangerous. Although the evidence shows that Rebecca Hansen was injured on Wal-Mart's property, that fact standing alone does not create the inference that Wal-Mart's negligence caused the injury.Louderback at ¶ 21 ("[A]n inference of negligence does not arise simply because an invitee falls while on the shopkeeper's premises."). As the court explained in Wise v. Timmons (1992), 64 Ohio St.3d 113, 116,592 N.E.2d 840: *Page 10 
 "In an action based on negligence, the presumption exists that each party was in the exercise of ordinary care and such presumption prevails until rebutted by evidence to the contrary." Biery v. Pennsylvania RR. Co. (1951), 156 Ohio St. 75, 45 O.O. 70, 99 N.E.2d 895, paragraph two of the syllabus. The rule applies where the accident itself is the only evidence of negligence adduced. "Where the doctrine of res ipsa loquitur is not involved, negligence is never presumed from the mere fact of an accident and resulting injury, but specific acts or omissions indicating failure on the part of the defendant to exercise due care must be alleged as the direct and proximate cause of the injury, and the burden is upon the plaintiff to prove the same." St. Marys Gas Co. v. Brodbeck (1926), 114 Ohio St. 423, 151 N.E. 323, paragraph one of the syllabus.
The Hansens rely exclusively on Lane's testimony to prove that the stacks of screened houses represented an unreasonably hazardous condition. Although Lane did testify that she could not see over the stacks, she did not testify that the screened houses were stacked to a height that made them dangerous. The Hansens also point to Lane's testimony that Wal-Mart employees are supposed to give a "bump test" to displays to ensure that the displays are stable. However, Lane did not testify that the bump test had not been given to the display of screened houses, and there is no suggestion in the record that she should have known whether a bump test had been given. And while Lane testified that the display had been up for 3 days, her testimony does not indicate the condition of the display over those three days. Thus, her testimony does not show that a hazardous condition had existed for 3 days. Lane's testimony, by itself, does not create a genuine issue of material fact regarding whether the display of screened houses represented a hazardous condition of which Wal-Mart was or should have been aware.
 {¶ 15} Next, the Hansens argue that Wal-Mart knows that customers handle and restack merchandise and that this creates a danger that the merchandise will fall. Wal-Mart concedes this point in their brief, stating that "it is likely that a customer dislodged *Page 11 
the stability of the stack of houses while picking them up off the display." A premises occupier owes a duty of reasonable care not to "market[ ] goods in such a way that they are likely to be dislodged by other customers with resulting injury to the plaintiff[.]" Dan B. Dobbs, The Law of Torts (2000) § 235, at 603, citing Joseph A. Page, The Law of Premises Liability (2d ed. 1988 Supp.) § 7.12. In McCormack v.Pick-N-Pay Super Markets, Inc. (Cuyahoga App. 1960), 85 Ohio Law Abs. 33, 170 N.E.2d 491, 493, the Eighth District held that,
 "where * * * there is evidence of improper stacking, and from the cartons thus improperly stacked customers are invited to help themselves, the inference is reasonable that, but for such manner of stacking, none of the cartons would have fallen, or that it was an act of negligence to stack cartons of this kind and character to the height, width and depth at the place where the employee of Pick-N-Pay did so place the cartons."
In Kubiak v. Wal-Mart Stores, Inc. (1999), 132 Ohio App.3d 436, 441-42,725 N.E.2d 334, the Tenth District upheld the denial of the defendant's motion for a directed verdict in a case where a display of exercise equipment collapsed on a customer who was trying the machine out. The court concluded that "the gravity rider's collapse was due to its use by [the defendant's] patrons, that [the defendant] failed to use reasonable and ordinary care to learn of the existence of the defect [created by its patrons], and that [the defendant's] negligence was the proximate cause of [the plaintiff's] injuries." Id. at 442. In Cione v. K-MartCorp. (May 8, 1998), Hamilton App. No. C-970475, 1998 WL 226418, the First District held that a jury could reasonably conclude that it "was foreseeable to [the defendant] that an unrestrained piece of wheeled furniture displayed on a sagging shelf could roll off and cause injury" and that any cause that set the cart in motion, including another customer dislodging it, was foreseeable. *Page 12 
 {¶ 16} Thus, Wal-Mart could be liable if it stacked the screened houses in a manner in which it was reasonably foreseeable that another customer would dislodge them and make the display unstable and dangerous. However, none of the evidence relied on by the Hansens shows that the stacks were unstable at the time that they collapsed. Moreover, they have not put forward any evidence to show that the stacks were rendered unstable by other customers or that Wal-Mart failed to conduct a reasonable inspection of the stacks. The Hansens merely speculate that was the case. However, speculation or conjecture is not enough; they must point to some facts in the record. Bolton, supra.
 {¶ 17} Although not specifically raised in the Hansens brief, Kimberly Hansen testified that there appeared to be "too many" screened houses in the stacks before they collapsed. She elaborated on this statement by explaining that "[she] wouldn't stack something too high knowing that it would fall." However, Kimberly Hansen did not testify to any facts to support her conclusion that the screened houses appeared to be stacked in an unstable or dangerous manner. Given the fact that she did not witness the display collapse, her suggestion that the stacks toppled because they had been stacked too high amounts to mere speculation. And the Hansens failed to put forward any expert testimony or industry standards suggesting that it would be unreasonable to stack the screened houses beyond eye-level because they would pose the risk of falling on customers.
 {¶ 18} Finally, the Hansens assert that it is "beyond belief" that Rebecca Hansen played any role in causing the display to topple, although they put forward no evidence supporting this contention. Thus, the Hansens make no argument and put forward no *Page 13 
evidence showing that Wal-Mart was negligent in stacking the screened houses in such a way that a toddler could pull them over.
 {¶ 19} Taken together and drawing all reasonable inferences in favor of the Hansens, there is no direct evidence of any negligence on Wal-Mart's part in initially constructing the display of screened houses or in failing to conduct a reasonable inspection of it. There is also no evidence that Wal-Mart displayed its merchandise in a manner likely to be made hazardous by the actions of other customers or toddlers like Rebecca Hansen. We find no error in the trial court's findings that the Hansens failed in their burden to set forth specific facts showing that there is a genuine issue for trial.
 B. Res Ipsa Loquitur {¶ 20} The Hansens argue in their second, third, and fourth assignments of error that the trial court erred in finding the doctrine of res ipsa loquitur was inapplicable because Wal-Mart had exclusive control of the display of screened houses. In particular, they rely on evidence by Wal-Mart employees to the effect that Wal-Mart's corporate headquarters retained control over the distribution and placement of merchandise in its stores, including the way that the display of screened houses was stacked. The Hansens also argue that the trial court failed to completely consider the evidence of exclusive control marshaled in opposition to Wal-Mart's motion for a summary judgment.
 {¶ 21} The doctrine of res ipsa loquitur permits a plaintiff in a negligence action to prove through the use of circumstantial evidence that the defendant was negligent. Jennings Buick, Inc. v.Cincinnati (1980), 63 Ohio St.2d 167, 170, 406 N.E.2d 1385. As we have previously explained, "`[a] res ipsa loquitur case is ordinarily merely one kind *Page 14 
of case of circumstantial evidence, in which the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it.'" Degen v. Mann, Ross App. 00CA2575, 2001-Ohio-2468, quoting Restatement (Second) Torts § 328D, cmt. b. A plaintiff seeking to invoke the doctrine of res ipsaloquitur must produce evidence demonstrating:
 "`(1) That the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed.'"
Degen, supra, quoting Jennings Buick, 63 Ohio St.2d at 170-71,406 N.E.2d 1385, quoting in turn Hake v. Wiedemann Brewing Co. (1970),23 Ohio St.2d 65, 66-67, 262 N.E.2d 703. Whether a plaintiff has adduced sufficient evidence to warrant application of the doctrine of res ipsa loquitur is a question of law subject to de novo review on appeal.Degen, supra, citing Hake, 23 Ohio St.2d at 66-67, 262 N.E.2d 703.
 {¶ 22} The trial court concluded that Wal-Mart did not have exclusive control over the display of screened houses because other customers and Rebecca Hansen could have dislodged the stacks and made them unstable. We have previously explained the rationale behind requiring the defendant to have exclusive control over an instrumentality before the doctrine of res ipsa loquitur can be applied:
 "The doctrine of res ipsa loquitur is founded on an absence of specific proof of acts or omissions constituting negligence, and the particular justice of the doctrine rests upon the foundation that the true cause of the occurrence, whether innocent or culpable, is within the knowledge or access of the defendant and not within the plaintiff's knowledge or accessible to him." *Page 15 
Fidelity Guaranty Insurance v. Spires (May 26, 1983), Athens App. No. 1123, 1983 WL 3179, quoting Shields v. King (1973) 40 Ohio App.2d 77
(emphasis in original). For this reason, Ohio courts generally hold that a premises occupier will not be deemed to have exclusive control over an object where the public has access to it. See Davis v. City ofAkron (Mar. 8, 2000), Summit App. No. CA19553, 2000 WL 254900 ("The doctrine of res ipsa loquitur has repeatedly been held inapplicable where the instrumentality causing the injury, often a chair, was located in a public area that many people have access to."); McConnell v. BudgetInns of Am. (1998) 129 Ohio App.3d 615, 718 N.E.2d 948 ("This public access to the instrument of the injury precludes a finding of exclusive control on the part of the motel."); Lewis v. Newburg Supermarket (Sept. 24, 1998), Cuyahoga App. No. 73238, 1998 WL 655491 ("[T]he electronic door and cart storage area are located in a public area with many people using them, thereby eliminating any exclusive control the supermarket may have had on them."); Caldwell v. Greek Corp. (Sept. 19, 1997), Lucas App. No. L-96-397, 1997 WL 586708 ("Several appellate courts have held that a defendant does not have exclusive control over a chair which is located in a public area where many people use and have access to it.").
 {¶ 23} Similarly, Ohio courts have held that a defendant does not have exclusive control over a display of merchandise where members of the public frequent an area and have access to the display. In Carr v. MayDept. Stores Co. (Sept. 21, 2000), Cuyahoga App. No. 77290,2000 WL 1369902, the Eighth District held that a department store did not have exclusive control over a mannequin at the time it fell on the plaintiff where the evidence showed that various third-party vendors as well as *Page 16 
members of the public had access to it. In Kemper v. Builder's Square,Inc. (1996), 109 Ohio App.3d 127, 138, 671 N.E.2d 1104, the Second District held that a home improvement store did not have exclusive control over posts displayed on a self-service shelving unit absent evidence that "no other customers or third parties could have had control over or rearranged the posts from the time the posts left the control of [the defendant] until [the plaintiff] was injured."
 {¶ 24} Here, the evidence shows that the stacks of screened houses were in an area of the store frequented by other customers immediately before the display collapsed. In fact, Kimberly Hansen testified that the stacks were within easy reach of customers and the children of customers. Thus, the display was no longer within Wal-Mart's exclusive control at the time of the accident. The Hansens have failed to demonstrate that no third parties — or Rebecca Hansen herself — had access to the display between the time that Wal-Mart last arranged or straightened the stacks and the time of the accident. Because the Hansens have failed to produce evidence showing that the display remained in Wal-Mart's exclusive control at the time that the stacks toppled, the trial court correctly concluded that the doctrine of res ipsa loquitur did not apply.
 V. Conclusion {¶ 25} The trial court correctly concluded that the Hansens failed to produce sufficient direct evidence to create a genuine issue of fact concerning whether Wal-Mart acted negligently in arranging, inspecting, and maintaining the display of screened houses. And the trial court properly concluded that the doctrine of res ipsa loquitur was inapplicable because the Hansens failed to produce sufficient evidence that Wal-Mart *Page 17 
retained exclusive control over the display at the time of the accident. Therefore, we affirm the judgment below.
 JUDGMENT AFFIRMED. *Page 18 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED and that Appellants shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. McFarland, J.: Concur in Judgment and Opinion. *Page 1