[Cite as *Beneficial Ohio, Inc. v. Parish*, 2012-Ohio-1146.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| Beneficial Ohio, Inc., | : | Case No. 11CA3210 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| Danny L. Parish, et al., | : | |
| | : | **RELEASED 3/16/12** |
| | | |
| Defendants-Appellants. | : | |

_____

APPEARANCES:

Luke M. Feeney and Joshua M. Goodwin, Southeastern Ohio Legal Services, Chillicothe, Ohio, for appellants Danny and Inez Parish.

Stephen D. Miles and Vincent A. Lewis, Dayton, Ohio, for appellee.
_____

Harsha, J.

{¶1}    Danny and Inez Parish (the Parishes) appeal the trial court's decision granting Beneficial Ohio, Inc. a summary judgment on its foreclosure complaint.  The Parishes contend because Beneficial's complaint is barred by the affirmative defense of res judicata, the trial court should have dismissed it.  Specifically, they argue that Beneficial previously filed and voluntarily dismissed two foreclosure complaints against them based on the same transaction or occurrence that is the subject of this case.  Therefore, the Parishes claim that under Civ.R. 41(A)(1)'s double-dismissal rule, the second dismissal constituted an adjudication on the merits barring a third action.

{¶2}    We conclude genuine issues of material fact exist about whether Beneficial's complaints arose out of the same transaction or occurrence and therefore also exist about whether res judicata applies.  Accordingly, the trial court erred when it

granted Beneficial a summary judgment.  But it did not err when it failed to "dismiss" Beneficial's complaint, i.e., grant the Parishes a summary judgment, in light of those same factual issues.  We affirm the trial court's judgment in part, reverse it in part, and remand for further proceedings.

## I.  Facts

{¶3}    On March 13, 2007, the Parishes executed a note and a real estate mortgage in favor of Beneficial.  After the Parishes missed payments under the note, they filed for bankruptcy and received a discharge that removed their personal liability on the note.  However, the mortgage remained effective as security for the note.  See *Deutsche Bank Natl. Trust Co. v. Doucet*, 10th Dist. No. 07AP-453, 2008-Ohio-589, at ¶17.  Beneficial invoked an acceleration clause in the note, declaring all sums secured by the mortgage to be immediately due.  Beneficial filed complaints against the Parishes in March 2008 and May 2009, seeking to foreclose the mortgage lien; however, each time it voluntarily dismissed its complaint under Civ.R. 41(A)(1)(a).  After Beneficial filed each complaint, the Parishes made additional payments in varying amounts to the company.

{¶4}    In October 2009, Beneficial filed a third foreclosure complaint against the Parishes.  In response the Parishes filed a memorandum that argued the third complaint was barred by res judicata based on Civ.R. 41(A)(1)'s double-dismissal rule.  The court denied this "motion to dismiss" without explanation.  Subsequently, Beneficial filed for summary judgment.  In their memorandum in opposition, the Parishes again claimed that the action was barred by res judicata and asked the court to "dismiss" the case.  The court once more rejected the res judicata argument, finding that the Parishes made

"substantial payments" to Beneficial since it filed the first complaint. Because "[t]hese payments were credited and each foreclosure complaint sought a different balance" the court held that each suit involved a different set of operative facts and res judicata did not apply. After the court granted Beneficial a summary judgment, this appeal followed.

## II. Assignment of Error

{¶5} The Parishes assign one error for our review:

The Court Erred in Failing to Dismiss Plaintiff's Complaint and Subsequently Granting Plaintiff's Motion for Summary Judgment.

## III. Standard of Review

{¶6} The Parishes claim that the trial court erred when it granted Beneficial's motion for summary judgment. The Parishes also argue that the trial court should have "dismissed" the third complaint because under Civ.R. 41(A)(1), Beneficial's second dismissal constituted an adjudication on the merits and res judicata bars a third action. Although the Parishes characterized the relief sought in their memorandum in opposition to Beneficial's motion for summary judgment as a "dismissal," as we explain below, we construe it as a request for summary judgment in the Parishes' favor.

{¶7} Civ.R. 41(A)(1) governs the voluntary dismissal of a civil action by the plaintiff and provides:

[A] plaintiff, without order of court, may dismiss all claims asserted by that plaintiff against a defendant by doing either of the following:

(a) filing a notice of dismissal at any time before the commencement of trial unless a counterclaim which cannot remain pending for independent adjudication by the court has been served by that defendant;

* * *

Unless otherwise stated in the notice of dismissal * * *, the dismissal is without prejudice, except that *a notice of dismissal operates as an*

> *adjudication upon the merits of any claim that the plaintiff has once dismissed in any court.*  (Emphasis added.)

In other words, if a plaintiff files two unilateral notices of dismissal regarding the same claim, "the second dismissal is with prejudice under [Civ.R. 41(1)(A)'s] double-dismissal rule, and res judicata applies if the plaintiff files a third complaint asserting the same cause of action."  *U.S. Bank Natl. Assn. v. Gullotta*, 120 Ohio St.3d 399, 2008-Ohio-6268, 899 N.E.2d 987, at ¶25 ("*Gullotta*"), quoting *Olynyk v. Scoles*, 114 Ohio St.3d 56, 2007-Ohio-2878, 868 N.E.2d 254, at ¶10.

{¶8}    However, rather than providing an independent mechanism for dismissal of a third complaint, Civ.R. 41(A)(1) merely describes the effect of a second dismissal on the plaintiff's case.  *EMC Mtge. Corp. v. Jenkins*, 164 Ohio App.3d 240, 2005-Ohio-5799, 841 N.E.2d 855, at ¶8.  Moreover, in construing Civ.R. 8(C) the Supreme Court of Ohio has found that res judicata cannot be raised in a Civ.R. 12(B) motion to dismiss. *State, ex rel. Freeman v. Morris* (1991), 62 Ohio St.3d 107, 109, 579 N.E.2d 702. However, res judicata can be raised in a motion for summary judgment.  Id. Accordingly, we construe the Parishes' argument to be that the trial court erred when it granted Beneficial a summary judgment and did not grant them a summary judgment.

{¶9}    When reviewing a trial court's decision on a motion for summary judgment, we conduct a de novo review governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, at ¶8. Summary judgment is appropriate when the movant has established:  1.) there is no genuine issue of material fact; 2.) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, with the evidence against that party being construed most strongly in its favor; and 3.) the moving party is entitled to

judgment as a matter of law. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (per curiam). See Civ.R. 56(C).

{¶10} The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 294, 1996-Ohio-107, 662 N.E.2d 264. To meet its burden, the moving party must specifically refer to "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that affirmatively demonstrate the non-moving party has no evidence to support the non-moving party's claims. Civ.R. 56(C). See, also, *Hansen v. Wal–Mart Stores, Inc.*, 4th Dist. No. 07CA2990, 2008-Ohio-2477, at ¶8. Once the movant supports the motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in [Civ.R. 56], must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). "If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Id.

IV. Res Judicata

{¶11} Under the doctrine of res judicata, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382, 1995-Ohio-331, 653 N.E.2d 226. "The applicability of res judicata is a question of law that is subject to de novo review." *Althof*

*v. State*, 4th Dist. No. 04CA16, 2006-Ohio-502, at ¶13.   Under Civ.R. 41(A)(1), if the

plaintiff files two unilateral notices of dismissal regarding the same claim, the second

dismissal operates as an adjudication on the merits.  Thus res judicata bars a third

complaint if it arises out of the same transaction or occurrence that was the subject

matter of the previous action.  For purposes of res judicata analysis, a "transaction" is

defined as a "common nucleus of operative facts."  *Grava* at 382, quoting 1

Restatement of the Law 2d, Judgments (1982) 198-199, Section 24, Comment b.  As

the First District explained in *Geiger v. Westfield Natl. Ins. Co.*, 1st Dist. No. C-080355,

2008-Ohio-6904, at ¶7:

> Although it pre-dates *Grava*, the Ohio Supreme Court case of *Norwood v. McDonald* [(1943), 142 Ohio St. 299, 52 N.E.2d 67, reversed on other grounds in *Grava*,] is helpful in determining what a "common nucleus of operative facts" is.  The *Norwood* court found that, to determine whether a second action is barred by a first, a court should consider the facts essential to the maintenance of each cause of action.  If the same facts or evidence would sustain both, then the second action is barred by res judicata.  If, however, the two cases rely upon different facts, a judgment in one case is no bar to the maintenance of the other.  "Different facts" do not include "different shadings of the facts" or an emphasis "of different elements of the facts."  (Footnotes omitted.)

{¶12}  Thus our task is to determine if genuine issues of material fact exist about

whether Beneficial's foreclosure complaints arose out of the same transaction or

occurrence, i.e., from a common nucleus of operative facts.  The trial court held that

each complaint arose from a different set of operative facts because each complaint

"sought a different balance" in light of the fact that the Parishes made "substantial

payments" to Beneficial after it filed each lawsuit. The trial court cited the Supreme

Court of Ohio's decision in *Gullotta*, supra, in support of its decision.

{¶13}  In that case, Gullotta executed a note with an acceleration clause and a

mortgage.  U.S. Bank, the holder of the note, filed and voluntarily dismissed two complaints against him.  When U.S. Bank filed a third foreclosure action, Gullotta argued that the second dismissal constituted an adjudication on the merits and res judicata barred the third action because all three actions related to the same note and mortgage.   In each action, U.S. Bank sought money judgment, foreclosure, and relief, declared the entire debt due, and prayed for judgment in the amount of $164,390.91 (the principal due) and interest.  After Gullotta filed his motion to dismiss, which the court converted to a motion for summary judgment, U.S. Bank amended its complaint to bring alternative claims against Gullotta.  First, it sought judgment in the amount of $164,390.91 plus interest from December 1, 2003, i.e., the same date used in the second complaint.  Alternatively U.S. Bank still sought judgment in the amount of $164,390.91 but only requested interest from April 1, 2005, i.e., a date after the second dismissal.

{¶14}  The trial court found that res judicata did not apply because the April 1 "default date" occurred after the second dismissal and "could not have been included in either of the first two actions."  *Gullotta* at ¶10.  The court granted U.S. Bank summary judgment, and the Fifth District affirmed.  It held that each new missed payment on an installment note gives rise to a new claim and that res judicata did not bar the third foreclosure complaint because it covered dates of default and months not litigated in the first two complaints.  Id. at ¶11, ¶13.  Based on a conflict with a Tenth District decision, the Fifth District certified the following issue to the Supreme Court of Ohio:  "Whether or not each missed payment under a promissory note and mortgage yields a new claim such that any successive actions on the same note and mortgage involve different

claims and are thus exempt from the 'two-dismissal rule' contained in Civ.R. 41(A)(1)."

Id. at ¶¶16-17.

{¶15} The Supreme Court held that each missed payment did not give rise to a

new claim. Id. at ¶1. The Court explained:

> [A]ll of the claims in all of the complaints filed by U.S. Bank against Gullotta arise from the same note, the same mortgage, and the same default. The note and mortgage have not been amended in any way. From the time of Gullotta's original breach, he has owed the entire amount of the principal. The amended third complaint alleged the same amount of principal due as the other two complaints.
>
> The key here is that the whole note became due upon Gullotta's breach, not just the installment he missed. * * *
>
> * * *
>
> * * * In a contract with an acceleration clause, a breach constitutes a breach of the entire contract. Once Gullotta defaulted and U.S. Bank invoked the acceleration clause of the note, the contract became indivisible. The obligations to pay each installment merged into one obligation to pay the entire balance on the note.
>
> Despite the existence of the acceleration clause, the court below held that each successive time that Gullotta failed to make a payment, a new cause of action arose. We agree with the contrary position adopted by the court in [*EMC Mtge. Corp. v. Jenkins*, 164 Ohio App.3d 240, 2005-Ohio-5799, 841 N.E.2d 855]. *EMC* is akin to this case. There, as here, the defendant missed the first payment under the note and mortgage and continually remained in default. All the complaints against the mortgagor in *EMC* "sought judgment for the entire amount of the principal due under the note, with accrued interest, late charges, advances for taxes and insurance, and costs." *EMC*, 164 Ohio App.3d 240, 2005-Ohio-5799, 841 N.E.2d 855, at ¶26. The mortgagor never "cured his default or had his loan reinstated." Id. * * *
>
> Civ.R. 41(A) would not apply to bar a third claim if the third claim were *different* from the dismissed claims. As the court in *EMC* pointed out, there are examples from Ohio courts where successive foreclosure actions were indeed considered to be different claims. In those cases, however, the underlying agreement had significantly changed or the mortgage had been reinstated following the earlier default. * * *

* * *

There are no such differences among U.S. Bank's claims in this case. Here, in an attempt to get around having its claim barred by res judicata, U.S. Bank amended its third complaint to include a prayer for interest from April 1, 2005. That amendment was merely a change to the complaint, not a change in the common nucleus of operative facts supporting the claim. The complaint still arose from Gullotta's original default, when the entire principal became due. Gullotta did not make a single payment after the debt was first declared due, the parties changed none of the terms of the note, and U.S. Bank asked for the same amount of principal in each of its complaints.

Although U.S. Bank's complaint changed, the operative facts remained the same. Plaintiffs cannot save their claims from the two-dismissal rule simply by changing the relief sought in their complaint. Allowing U.S. Bank to do so would be like allowing a plaintiff in a personal-injury case to save his claim from the two-dismissal rule by amending his complaint to forgo a couple of months of lost wages.

The court below was concerned * * * [with banks] deciding not to negotiate with mortgagors to assist them in becoming current on their mortgages. We agree that negotiations between a mortgagee and mortgagor to prevent an ultimate foreclosure are desirable for all the parties and for the state as a whole. Here, there is nothing in the record to indicate that there were any fruitful negotiations between the parties. Had there been any change as to the terms of the note or mortgage, had any payments been credited, or had the loan been reinstated, then this case would concern a different set of operative facts, and res judicata would not be in play. Instead, 15 months passed between the date of the alleged default and U.S. Bank's second voluntary dismissal. In that period, nothing changed between the parties. It remained within U.S. Bank's control as to whether it should dismiss its second complaint. It did dismiss the complaint a second time, and Civ.R. 41(A) operated as it would against any other plaintiff. (Emphasis sic.) Id. at ¶¶28-38.

{¶16} In support of its position that the Parishes' additional payments prevented the application of res judicata, the trial court focused on the Supreme Court's statement in *Gullotta* that "had any payments been credited * * * then this case would concern a different set of operative facts, and res judicata would not be in play." Id. at ¶38. But because Gullotta never made any payments once U.S. Bank filed the first complaint, we

view the Court's statement as dicta. See *State v. Pavlich*, 6th Dist. No. E-10-011, 2011-Ohio-802, at ¶52 ("[D]icta is defined as '[e]xpressions in court's opinions which go beyond the facts before the court and therefore are * * * not binding in subsequent cases as legal precedent.' Black's Law Dictionary (6 Ed.1990) 454.").

**{¶17}** The Parishes contend that the Fifth District's decision in *Beneficial Ohio, Inc. v. LeMaster*, 5th Dist. No. 2008CA0100, 2009-Ohio-3984 ("*LeMaster*") supports their position that the payments they made to Beneficial do not bar the application of res judicata. They argue that in spite of the fact that each of Beneficial's complaints in *LeMaster* alleged a lower principal balance, implying that the borrower made additional payments, the court concluded that res judicata barred the company's third complaint. However, it does not appear that Beneficial argued in that case that the lower balance/additional payments prevented the application of res judicata. Therefore, we find *LeMaster* unhelpful in resolving this case.

**{¶18}** Nonetheless, we agree with the Parishes' position that when a borrower defaults on a note and the holder invokes an acceleration clause, the holder cannot file and dismiss an unlimited number of lawsuits *solely* because the borrower makes payments after the holder files each suit. In this scenario all claims would still arise from "the same note, the same mortgage, and the same default." *Gullotta* at ¶28. The note and mortgage would not have been amended in any way. In addition, all claims would arise from the default that occurred when the borrower initially breached the terms of the agreement and the holder invoked the acceleration clause, making the entire balance due – whatever that amount may be. Thus, the fact that the borrower made additional payments is not an operative fact that would prevent the application of res

judicata.  The common nucleus of operative facts supporting the claims – the agreement and default - has not changed.  Additional payments merely decrease the amount of relief the holder is entitled to, and "[t]hat a plaintiff changes the relief sought does not rescue the claim from being barred by res judicata * * *."  Id. at ¶27.  Therefore, the trial court erred when it found that Beneficial's complaints arose from a different set of operative facts merely because the Parishes made payments after Beneficial filed each of the first two complaints.

{¶19}  However, if after each dismissal Beneficial and the Parishes agreed to change the terms of the note or mortgage (meaning each complaint was premised on a different agreement and new default under that different agreement) or successfully reinstated their original agreement (meaning subsequent complaints were based on a new, post-reinstatement default) Beneficial's complaints would involve a different set of operative facts.  See id. at ¶33 (explaining that Ohio courts have found successive foreclosure actions to be different claims when "the underlying agreement had significantly changed or the mortgage had been reinstated following the earlier default").  In spite of the fact that the record contains no formal documentation, the Parishes contend that neither of these events occurred while Beneficial argues that both of them happened.

{¶20}  Beneficial's argument reflects its misunderstanding of a reinstatement.  "Reinstate" means "[t]o reinstall; to reestablish; to place again in a former state, condition, or office; to restore to a state or position from which the object or person had been removed."  Black's Law Dictionary (Abridged 6th Ed.1991) 891.  As the note the Parishes executed explains, in this case a reinstatement would mean that the

"[m]ortgage and the obligations secured hereby[, i.e., the note] * * * remain in full force and effect as if no acceleration has occurred." Thus the parties cannot simultaneously "reinstate" their agreement, i.e., be restored to their former positions under the original agreement, and change the terms of that agreement, i.e., alter the terms of the note and mortgage.

{¶21} For reinstatement, the note requires the Parishes to pay Beneficial "all sums which would be then due under this Mortgage and the Note had no acceleration occurred[.]" Beneficial acknowledges that the parties never reinstated their agreement under the terms of the note. Although the Parishes made payments after Beneficial filed each lawsuit, the parties agree that at no time did the Parishes pay Beneficial the amount it was then due under the agreement had the acceleration not occurred. Beneficial contends that the note does not "preclude the parties themselves from mutually agreeing to a reinstatement on other terms which is exactly what happened with the first two foreclosure actions." (Appellee's Br. 2). However, because the Parishes would still be in default under the terms of the original agreement, there is simply no way the parties could be restored to their former positions unless the Parishes paid Beneficial all the sums it was then due had acceleration not occurred. Thus, we agree with the Parishes that no "reinstatement" occurred.

{¶22} In light of the absence of any written agreement in the record, we find that genuine issues of material fact exist about whether the parties agreed to change the terms of the note or mortgage after Beneficial filed each lawsuit. The parties agree that they never had a reaffirmation agreement under 11 U.S.C. 524(c). The Parishes contend that they never reached any new or modified agreement with Beneficial, and

Beneficial has not produced a written document to that effect. In an affidavit, Mr. Parish averred that after the couple received the discharge in bankruptcy, he tried to get a "loan reaffirmation" from Beneficial. (Parish Aff. ¶2). He "was told that in order to discuss a reaffirmation I would have to pay $5,801.40 as a good faith payment." (Parish Aff. ¶3). Beneficial dismissed the first complaint after he made this payment, but he "never received a reaffirmation or any documentation reflecting the receipt of that payment." (Parish Aff. ¶4). Then Beneficial told him that he would not receive "a reaffirmation." (Parish Aff. ¶5). A Beneficial representative suggested he contact another company, Acorn, to obtain a loan modification. (Parish Aff. ¶6).

{¶23} Mr. Parish received a letter about a proposed modification from Beneficial dated June 23, 2008. (Parish Aff. ¶7). According to that letter, the Parishes were approved for assistance in Beneficial's "Hardship Program." The letter states that the Parishes' interest rate and monthly payment would be reduced if they made a "hardship qualifying payment" to "activate the hardship." And "[i]f the qualifying payment [was] not timely received, this approval and [the Parishes'] application [would] be revoked * * *." Mr. Parish averred that he made a hardship qualifying payment. (Parish Aff. ¶8). However, the record contains no evidence that Beneficial considered this payment timely and accordingly modified the parties' agreement. Mr. Parish averred that he asked Beneficial on "several occasions" for "a new mortgage agreement reflecting the modification" but never received one. (Parish Aff. ¶9). Mr. Parish averred that "[a]ny and all payments that I made following the first foreclosure being filed in 2008 were made based on Beneficial's request, and as part of negotiations so that I could obtain a loan modification and reaffirmation." (Parish Aff. ¶10). He further averred: "After each

payment I was told I would receive new loan papers with modified terms.  I never did.

No one ever told me that my loan was being reinstated.  * * * I never received any notice

after the first foreclosure was filed, that I had defaulted on the loan, or that Beneficial

was accelerating the amount due on the loan again."  (Parish Aff. ¶¶10-14).

{¶24}  However, Jack Norris, the assistant vice president of default services for

H.S.B.C. Bank (the parent company of Beneficial Finance and Household Finance),

testified at one hearing about changes the parties made to their agreement.  According

to Norris, when Beneficial dismissed the first two lawsuits the company was accepting a

minimum of two full contract payments to "reinstate" and "restructure" accounts to bring

them "current."  Norris explained that the company took "any past due payments after

reinstatement is allowed by acceptance of payments, and * * *move[d] them to the back

of the loan, into a bucket of funds that no longer accrues interest and * * * allow[ed] the

customer then to start from that point making payments go[ing] forward so that they'd

show as current, they're on time, and they're able to maintain a residence."  The

restructuring would extend the length of the mortgage by "whatever number of

payments were restructured."  In the Parishes case, the mortgage was extended by

nine months after the first restructuring and eleven months after the second

restructuring.  Even though Norris incorrectly characterized what happened with the

Parishes' account as a "reinstatement," his testimony supports Beneficial's claim that

the parties made changes to the note and mortgage.  Specifically, Norris testified that

the parties modified the length of the loan obligation.  Presumably, the agreements

Norris described, i.e., Beneficial dismissed each complaint and extended the loan length

in exchange for a minimum of two contract payments, are what Beneficial refers to in its

appellate brief as "reinstatement" or "forbearance agreements."

**{¶25}** Given the lack of formal documentation and the conflicting version of events from Mr. Parish and Norris, genuine issues of material fact exist about whether the parties modified their original agreement to the effect that each of Beneficial's lawsuits was based on a different agreement and different default. The enforceability of any new agreement the parties may have reached is a separate issue we do not address at this time.

## V.  Conclusion

**{¶26}** In sum, the trial court erred when it found that res judicata did not apply merely because the Parishes made payments to Beneficial after it filed each of the first two complaints. Moreover, genuine issues of material fact exist about whether each complaint is based on a different agreement and thus a different default. Therefore, genuine issues of material fact exist on whether the complaints arose from the same transaction or occurrence and res judicata applies. We sustain the Parishes' assignment of error to the extent they contend the court erred when it granted Beneficial a summary judgment. We overrule the assignment of error to the extent the Parishes argue that the court should have granted them a summary judgment. Accordingly, we affirm the trial court's judgment in part, reverse it in part, and remand for further proceedings.

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART,
AND CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED. Appellants and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

Abele, P.J. & Kline, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
        William H. Harsha, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**